## Chicago and South Side Rapid Transit R. R. Co. et al., use of, etc. v. Northern Trust Co., Trustee, et al.

1. APPELLATE COURT PRACTICE—*Affidavits Outside the Record on a Motion to Dismiss.*—On motion to dismiss a writ of error it is proper to present affidavits of matters *dehors* the record, especially when the purchaser of the property sold under a decree of foreclosure is made a party to the writ of error, although not a party to the foreclosure, and there are equitable reasons why the writ should not be prosecuted as against such purchaser.

2. STOCKHOLDER—*No Right to Sue Out a Writ of Error Without Authority of the Corporation.*—A stockholder has no right to sue out a writ of error in the name of the corporation without its authority or consent.

3. RAILROADS—*Right to Dispose of Privileges Given by Ordinance.* —Where a city ordinance granting a franchise to a railroad company provides that the consent given by such ordinance should not authorize any other company to use the franchise, it was held that this provision did not prohibit the railroad company from transferring the privileges granted, and that it being for the benefit of the city, the city alone could insist upon the observance of the provision.

4. SAME—*Stock and Bonds, How Regarded.*—Railroad stocks and bonds are to be regarded as having been issued for money, labor or property (as the case may be) actually received, and applied, within the meaning of the constitution, when purchased for a present consideration, in good faith, in the regular course of business from a railroad company, such consideration being accepted by the proper officer of the company, and nothing appearing to show that it was to be applied to other than legitimate corporate purposes.

5. SAME—*Stock and Bonds, How Regarded When Taken by a Contractor in Payment.*—The fact that a contractor is paid in stock or bonds nominally of much greater par value than the cost of the road in

actual money, is not in itself conclusive evidence of a fictitious or even an excessive consideration. A contractor has a right to a margin sufficiently large to cover all the risks he takes, and make it worth his while to proceed with the undertaking.

6. CORPORATIONS—*Contracts Ultra Vires, When Binding.*—Contracts *ultra vires*, though not binding where executory, are binding upon the corporation when it permits the other party, without objection, to perform, and by that means obtains his money, property or labor in furtherance of some legitimate corporate purpose.

7. RAILROAD BONDS—*Negotiability Not Destroyed by an Option to Declare Them Due on Default of Interest.*—The negotiability of a railroad bond, payable by its terms at a certain time, is not affected by an option given a mortgage trustee to declare it due before the time of payment, in case of a default in the payment of interest.

8. MORTGAGE FORECLOSURE—*Waiver of Conditions Not a Fraud, When.*—A waiver of a condition requiring six months' default before a foreclosure is not of itself a fraud. Circumstances may render such a provision entirely proper.

9. SAME—*Estoppel of a Mortgagor to Complain—Maturity of the Debt.*—Where there is a declaration of maturity of a debt by a mortgage trustee without a request from the proper number of stockholders, if the mortgagor company consents to such declaration it can not complain of the want of such request where the bondholders make no objection.

10. SAME—*Of Lands Not Included in the Mortgage.*—Lands which are not included in a railroad mortgage may be sold under a decree of foreclosure where the facts shown establish an equitable lien thereon in favor of the bondholders secured by the mortgage.

11. SAME—*Decree—Time for the Payment Must Be Reasonable.*—The time provided in a decree of foreclosure for the payment of mortgage debt should be reasonable. In this case the debt was $11,400,707. The decree entered June 29, 1896, required the payment to be made in ten days. The sale under the decree was made September 16, 1896, and was ordered confirmed on September 29, 1896, unless within ninety days there should be payment or a better bid. There was no payment or better bid and the sale was confirmed December 29, 1896. It was held no error in respect to the time allowed for payment.

Foreclosure.—Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed July 31, 1900.

Statement by the Court.—In March, 1888, the Chicago and South Side Rapid Transit Railroad Company was organized under the laws of Illinois for the purpose of constructing and operating a railroad, commencing at a point

462     APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

on the north line of Van Buren street, Chicago, between Lake Michigan and Clark street, and running thence southerly to Sixty-seventh street and thence to the Indiana State line. Its capital stock was $7,500,000, represented by 75,000 shares. The stock was subscribed for by six persons, five of whom took and paid for one share each. The remaining 74,995 shares were subscribed for by one A. F. Walcott.

March 10, 1888, the said company entered into a construction contract with said Walcott, whereby the latter undertook to procure the right of way and to build and equip an elevated railroad from Van Buren street to Sixty-seventh street. In consideration therefor the company agreed to give him a receipt in full for his said subscription for 74,995 shares of the capital stock, pay him $500 in cash, and to give him also $7,500,000 first mortgage bonds, out of an issue of $7,000,000, the company to retain the remaining $500,000 of bonds for its own business uses. Subsequently said contract was assigned by Walcott to the Rapid Transit Construction Company, with the assent of the said railroad company, and was thereafter amended by authority of the board of directors of said railroad.

March 26, 1888, at or about the time of the organization of the Chicago & South Side Rapid Transit Railroad Company, the city council of Chicago passed an ordinance granting said company the right to construct an elevated railroad from Van Buren street to Thirty-ninth street, which was then the city limits; and the sixteenth section of said ordinance contains the following:

" It is expressly provided that nothing contained in the foregoing ordinance shall in any way or manner be construed to permit the construction or operation of said elevated road in any street or alley of the city of Chicago, except to cross such street or alley of the city of Chicago, above provided; and it is further provided that the above consent shall never in any way or manner authorize any other railroad company or street or horse or dummy railroad company, to use the franchise herein above granted to said Chicago & South Side Rapid Transit Railroad Company."

Subsequently, April 2, 1891, and April 7, 1892, the city of Chicago passed amendatory ordinances granting the company the right to extend its road southward, to occupy the alley between Wabash avenue and State street from Congress to Twelfth streets, and by the last mentioned ordinance to extend its road along Sixty-third street to Jackson Park. The privileges thus granted by these amendatory ordinances were all subject to the limitations contained in the original ordinance of March 26, 1888, above quoted.

February 12, 1890, at a meeting of the stockholders of the said railroad company, a resolution was unanimously adopted, authorizing its officers to execute a mortgage to the Northern Trust Company and to create the debt thereby to be secured. October 1, 1890, a first mortgage was accordingly executed and delivered to said Northern Trust Company, as trustee, upon the first section of the road, from Van Buren street to Sixty-seventh street, to secure $7,500,000, in bonds of $1,000 each, bearing interest at five per cent, payable semi-annually, the first of April and October in each year, to run forty years.

The trust deed recites that said railroad company had contracted for construction of the first section of said railroad, and it was necessary to borrow money for the completion and equipment of said first section. It conveys, in addition to said first section, being about eight miles in length, with its tracks, all personal and real property acquired or to be acquired for said first section, whether then owned or to be thereafterward acquired, and all lands, buildings, rolling stock, equipment, franchises, privileges, rights, immunities, etc., accrued or to accrue to said first section, together with all tenements and hereditaments to said first section belonging, and all rents, issues and profits. The mortgage contains a provision for declaring the bonds due in case of default in payment of interest for six months after demand.

The construction company received its bonds and proceeded to acquire the right of way and construct the so-called first section of the road, and did so construct as

464    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

far as a point between Fifty-third and Fifty-fifth streets, when, it is said, it refused to proceed further. On or about December 15, 1892, a settlement was made and the construction company was released from its said contract, upon its turning over to the railroad company certain tracts of land, of the estimated value of $1,000,000, which it had acquired, with proceeds of bonds and stock received under the construction contract. Said land was not held or used for railroad purposes, and the title thereto was transferred to the Chicago Title and Guaranty Company, to be held in trust. The railroad company, in making said settlement, assumed and agreed to pay certain liabilities of the construction company, amounting to about $750,000.

In February, 1893, by vote of the stockholders, the making of a second mortgage trust deed was authorized, for the purpose of raising money to finish the construction of the so-called first section of the road, which terminated at Sixty-third street, and to build the so-called second section on Sixty-third street to Jackson Park, and the alley between Prairie and Calumet avenues. Accordingly, on or about January 2, 1893, the railroad company executed and delivered a second mortgage trust deed to said Northern Trust Company, to secure payment of an issue of forty year second mortgage bonds, amounting to $5,000,000, of which only $3,000,000 were issued. This second mortgage covered both the first and second sections of the railroad line, and included, in general terms, all lands, buildings, rolling stock, equipment, franchises, powers, rights and privileges appurtenant to said first and second sections, all rents, issues and profits, and specifically all rights under ordinances of the city of Chicago, subject as to said first section to the prior mortgage of October 1, 1889. The second mortgage provided that the bonds might be declared due, in case of default in payment of interest for six months after demand, and in case of default in principal or interest for six months after the same should be due and be demanded, the trustee might foreclose.

Default was made in payment of the interest due April

1, 1895, on the first issue of bonds, and in payment of the interest due July 1, 1895, on the second issue.

The Northern Trust Company was trustee under both mortgages, but upon the ground of conflicting interests resigned under the second mortgage October 4, 1895, and the Illinois Trust and Savings Bank was the same day appointed its successor.

The next day, October 5, 1895, the said Northern Trust Company, as first mortgage trustee, filed its bill to foreclose the first mortgage, there having been as to the first mortgage, due demand and six months default thereafter. The Illinois Trust and Savings Bank, as trustee under the second mortgage, was made party defendant together with the Title Guarantee and Trust Company, and the Continental National Bank (afterward dismissed).

Upon the same day, October 5th, the said second mortgage trustee, The Illinois Trust and Savings Bank, filed its answer, and also filed its cross-bill to foreclose the second mortgage pursuant to a resolution of the board of directors of the railroad company, whereby said company waived the provision in said second mortgage, requiring six months default, and authorized said trustee to act as though such default had occurred.

The Title Guarantee and Trust Company was the holder in trust for the mortgagor of a large amount of land received in settlement with the construction company, which both in the original bill and the cross-bill was alleged to have become, in equity, subject to the lien of the respective mortgages.

At the time of filing the original bill the mortgagor railroad company had on deposit in banks $136,375.64, which money was alleged in the original and cross-bills to be income derived from the operation of the road and subject in equity and under the provisions of the mortgages to be applied in payment of the mortgage debts.

There was, it is claimed, a *bona fide* litigated dispute between the first and second mortgage trustees as to their respective rights, the one claiming and the other denying

466    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

that the first mortgage was a first lien upon the entire railroad line, as it then existed; and also as to their respective rights against the alleged income, and against the lands held in trust by the Title Guarantee and Trust Company.

June 29, 1896, a decree of foreclosure was entered settling the rights of the parties, and ordering that the railroad, appurtenances and rights, franchises, powers, privileges, income, money and trust lands, be sold and applied to the payment of the mortgage debts; that the amount due on the bonds secured by the first mortgage was $8,172,812 and by the second $3,227,895, a total of $11,400,707.

The real estate, except that upon which the Twelfth street station of the railroad was located, was none of it appurtenant to the line, and it was by the decree ordered sold, subject to the usual right of redemption, while the rest of the property was ordered sold as railroad property absolutely and free from redemption.

The decree directed that in default of payment within ten days after its entry, the mortgaged property should be sold, and September 16, 1896, the master made sale thereof for the aggregate amount of $4,100,100 to George F. Adams and Leslie Carter.

September 28th, the master filed his report of sale, and all parties being in court, the complainant and cross-complainant moved for confirmation of the report, whereupon the mortgagor railroad company moved for further time within which to procure higher bids, or pay the mortgage debts. The court therefore ordered that the report of sale be approved and confirmed unless within ninety days either the whole debt, or the whole of the second mortgage debt should be paid, or that there should be bids at least six per cent higher than those originally made. December 29, 1896, the court, finding that no payment and no further bids had been made, entered an order of confirmation making the sale absolute, in which order it was provided by and with the consent of all parties, including the mortgagor, that the master have leave to apply to the court from time to time for such orders and directions as might be necessary

C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

or convenient in completing the sale and performing the decree. No appeal was taken by any party to the suit.

In the early part of 1897 the South Side Elevated Railroad Company, defendant in error, was organized and acquired the railroad and other property purchased by Adams and Carter, and now owns and operates the said road, and has expended more than $750,000 in betterments thereon.

It is claimed in behalf of plaintiffs in error that the practical result of these foreclosures is to wipe out and destroy the property interests of the stockholders in the original company.

December 12 and 13, 1898, nearly two years after the confirmation of the sale, certain stockholders, petitioners herein, in behalf of themselves and all other stockholders similarly situated, served notices on all the parties to said foreclosures and upon the surviving members of the board of directors of said mortgagor, with a demand that they or some of them should sue out a writ of error from this court by December 22, 1898, and stating that in default thereof the petitioners, as owners of over 12,000 of the 75,000 shares of the capital stock in said mortgagor railroad company, would apply for such writ. Accordingly, said stockholders have filed their petition and præcipe in the Appellate Court for a writ of error in the names of said railroad company and the Title Guarantee and Trust Company, for the use of themselves and all other stockholders similarly situated, and they bring into court Messrs. Adams and Carter as purchasers, and the new corporation, The South Side Elevated Railroad Company, as present holder of the said mortgaged property.

McClelland & Munroe, attorneys for plaintiffs in error, contended that a writ of error is a new suit and not a continuation of an old one. International Bank v. Jenkins, 107 Ill. 291; Roberts v. Fahs, 32 Ill. 474; Smith v. Rosseter, 11 Ill. 119; Hickman v. Haines, 5 Gilm. 20; Ripley v. Morris, 2 Gilm. 381; 2 Tidd's Practice, 1141; and that one,

468 APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

not a party to the suit below, is entitled to the writ if he is injured by the judgment and will be benefited by its reversal. Anderson v. Steger, 173 Ill. 112.

Stockholders of a corporation are regarded by courts of equity as the ultimate beneficiaries of its assets and are the *cestuis que trustent* of the corporation to which they belong. Chetlain v. Republic Life Ins. Co., 86 Ill. 223; Holder v. Lafayette, B. & M. R. R. Co., 71 Ill. 106; Mining Co. v. Mining Co., 116 Ill. 170; City of Chicago v. Cameron, 120 Ill. 447; Farwell v. Great Western Tel. Co., 161 Ill. 606.

Stockholders, against the will of the corporation to which they belong, are allowed to protect their interests in courts of equity. City of Chicago v. Cameron, 120 Ill. 457; Farwell v. Great Western Tel. Co., 161 Ill. 522; Bronson v. La Crosse R. R. Co., 2 Wall. (U. S.) 302; Farmers' Loan & T. Co. v. N. Y. & N. R. Co. et al., 150 N. Y. 410.

In a foreclosure suit, if the corporation fails to answer the bill, the stockholders will be permitted, in order to protect their interests, to answer for it and take an appeal. Farmers' L. & Trust Co. v. New York & N. R. Co., 150 N. Y. 410.

A writ of error, in the name of the corporation, will be granted a stockholder where there is reasonable ground for reversal. Peck v. N. Y. & L. N. S. M. S. Co., 3 Bosw. (N. Y.) 622.

The qualifications necessary for bringing the writ of error are the same as those for a bill of review. Allerton v. Hopkins, 160 Ill. 448; Griggs v. Geer, 3 Gilm. 2.

Stockholders are permitted to file a bill of review for the purpose of reversing a decree against the corporation to which they belong. Farwell v. Great Western Tel. Co., 161 Ill. 522.

The consent of the municipality is a condition precedent to the exercise of the power of a railroad company to lay its tracks either across or upon its streets. Sec. 4, Art. 11, Constitution of 1870; Sec. 5, Art. 20, Ch. 114, R. S.

Not even the legislature could grant a street railroad the right to construct and operate its road within a city, with-

out the consent of that city.   Byrne v. Chicago Gen. Ry. Co., 169 Ill. 75.

A street railway is a railway passenger carrier whose road lies along or upon the streets of a city.   The motive power may be supplied by either horse, electricity or locomotives. Elliott on Roads and Streets, 557; 23 Am. & Eng. Ency. of Law, 941.

A city is not limited in granting its license to a simple refusal, but can impose what conditions it sees fit, and when accepted they become binding.   Chicago & W. Ind. R. R. Co. et al. v. Dunbar, 100 Ill. 110; Byrne v. Chicago Gen. Ry. Co., 169 Ill. 75; Tudor v. Chicago & South Side R. T. R. R. Co., 154 Ill. 129.

The railroad company filed in the office of the city clerk its written acceptance of the ordinance involved in this case and of all its terms, provisions, limitations, conditions and reservations.   Tudor v. Chicago & South Side R. T. R. R. Co., 154 Ill. 129.

Conditions contained in an ordinance which has been accepted by a railroad company are of the same binding force as if contained in the act of incorporation.   Tudor v. The Chicago & South Side R. T. R. R. Co., 154 Ill. 129; Chicago Municipal Gas Light Co. v. Town of Lake, 130 Ill. 42.

Contracts which contemplate action forbidden by the common or statute law are not merely *ultra vires*, but are void.   Penn v. Borman, 102 Ill. 523; McNulta v. Corn Belt Bank, 164 Ill. 427; Bishop v. American Preserves Co., 157 Ill. 284; 4 Thompson's Corporations, Sec. 5428; 5 Robinson's Practice, 398; Comm'rs of Drainage Dist. v. People, 138 Ill. 87; Miller v. Amon, 145 U. S. 421.

A city within the powers granted it by the constitution or delegated to it by the State represents *pro hac vice* the legislature, and its ordinances have the force and effect of laws passed by the legislature.   Byrne v. Chicago Gen. Ry. Co., 169 Ill. 75; Mason v. Shawneetown, 77 Ill. 533; Tudor v. Chicago & S. S. R. T. R. R. Co., 164 Ill. 73; Tudor v. Chicago & S. S. R. T. R. R. Co., 154 Ill. 129; Hays v. Michi-

470    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

gan Central R. R. Co., 111 U. S. 22S; Tacoma v. Lilles, 4 Wash. 797; 1 Dillon's Municipal Corporations (4th Ed.), Sec. 308; Taylor v. Carondelet, 22 Mo. 105.

Ratification by all the stockholders does not alter a void contract. Bouton v. Dement, 123 Ill. 142; Oregon R. R. Co. v. Oregonian Ry. Co., 130 U. S. 1; Lucas v. White Line Tr. Co., 70 Iowa, 541; California Bank v. Kennedy, 167 U. S. 362.

Equitable estoppel does not grow out of a void contract. Penn v. Borman, 102 Ill. 523; Kadish et al. v. G. C. E. L. & B. Assn., 151 Ill. 531; County of Cook v. City of Chicago, 158 Ill. 524; Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564.

The right to maintain and operate a railroad is a right coupled with a public duty which can not be transferred by mortgage or otherwise without express legislative authority or grant in the charter of the corporation, and any attempt to transfer this right is void. Peoria & Rock Island R. R. Co. v. Coal Valley Mining Co., 68 Ill. 489; Thomas v. West Jersey R. R. Co., 101 U. S. 83; Oregon R. & Nav. Co. v. Oregonian Railroad Co., 130 U. S. 1; Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24; Penn. R. R. Co. v. St. Louis, A. & T. H. R. R. Co., 118 U. S. 290; St. Louis, V. & T. H. R. R. Co. v. Terre Haute & I. R. R. Co., 145 U. S. 393; Davis v. Old Colony R. R. Co., 131 Mass. 258; Middlesex R. R. Co. v. Boston & C. R. R. Co., 115 Mass. 347; Abbott v. Johnstown G. & K. Horse R. R. Co., 80 N. Y. 27; Chicago Gas Light & C. Co. v. People's Gas Light & C. Co., 121 Ill. 530; State v. Hartford & N. H. R. R. Co., 29 Conn. 538; Roper v. McWhorter, 77 Va. 214; Chollette v. Omaha & R. V. R. Co., 26 Neb. 159; Louisville Water Co. v. Hamilton, 81 Ky. 517; Hart v. Burnett, 15 Cal. 590.

The grants of a municipality to a railroad are by some courts termed licenses, on the theory that a municipal corporation can not grant a franchise, but can only grant a license, yet they are equally exclusive where they would be exclusive if granted by the legislature. Thompson on Corporations, Vol. 4, Sec. 5335.

The ordinance of the city, which has the same effect as if included in the act of incorporation, and the act of incorporation itself, granting the right to mortgage, must be construed together, so that each will have a sensible and intelligent effect. Young v. Stearns, 91 Ill. 221; Tudor v. C. & S. S. R. T. R. Co., 154 Ill. 129.

It must be presumed that persons are informed as to the restrictions annexed to the grant of power by which the corporation is authorized to act. American Trust Co. v. M. & N. R. R. Co., 157 Ill. 641; E. St. Louis v. E. St. L. G. L. & C. Co., 98 Ill. 433; Marshall County v. Cook, 38 Ill. 44; Central Transportation Co. v. Pullman's P. C. Co., 139 U. S. 24; Reefe v. Rundle, 103 U. S. 222; Pearce v. Madison & I. R. R. Co. et al., 21 Hun, 441; Haden v. Farmers' & Mutual Fire Assn., 80 Va. 683; Smith v. Cornelius, 41 W. Va. 59; Silliman v. Fredericksburg O. C. R. Co., 27 Grat. 119.

A construction contract, made by and between a railroad company and an individual at a time when the individual is the subscriber to all but five shares of the 75,000 shares of capital stock of the railroad and the five directors are the mere tools of the individual, is void. Gilman, C. & S. R. R. Co. v. Kelley, 77 Ill. 426.

The majority stockholders stand in the same position toward the minority stockholders as the directors do toward all the stockholders, and when the majority are interested in another corporation, and they have contracts between them, the contracts must be fair, or they will be held to be void. Farmers' Loan & Trust Company v. N. Y. & N. R. Co., 150 N. Y. 410; 2 Cook, Stock & Stockholders (4th Ed.), Sec. 662, p. 1315; 1 Morawetz Priv. Corp. (2d Ed.), Sec. 529; 1 Beach Private Corp., Sec. 70; 2 Bigelow on Fraud, 645.

The charter of a corporation imposes a liability on the stockholders to pay for the stock to which they subscribe at its par value. Union Ins. Co. v. Frear Stone Mfg. Co., 97 Ill. 537; Coleman v. Howe, 154 Ill. 458; Alling et al. v. Wenzel et al., 133 Ill. 264; National Bank v. Pacific Ry. Co., 66 Ill. App. 330; Howe v. Illinois Agricultural Works, 46 Ill. App. 85; Thayer v. El Plomo Mining Co., 40 Ill. App. 344.

472    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

Where stock and bonds of a corporation are issued in payment of property, and the property is worth not to exceed the par value of the stock, the stock must be considered fully paid for, and the bonds issued without consideration. Gamble v. Queens County Water Co., 123 N. Y. 91.

"The object of section 13, article 11, of the Constitution. and also section 22, chapter 114, Revised Statutes, was doubtless to prevent reckless and unscrupulous speculators, under the guise or pretense of building a railroad, or of accomplishing some other corporate purpose, from fraudulently issuing and putting upon the market bonds and stocks that do not and are not intended to represent money or property of any kind, either in possession or expectancy, the stock or bonds in such case being entirely fictitious." Peoria & S. R. R. Co. v. Thompson, 103 Ill. 187.

When bonds contain special stipulations and their payment is subject to contingencies not within the control of their holders, they are by established rules, deprived of the character of negotiable instruments, and become exposed to any defense existing thereto as though held by the original holders. McClelland v. Norfolk So. R. R. Co., 110 N. Y. 469.

It is essential to the negotiability of an instrument in writing for the payment of money that the event on which it is to become payable must inevitably happen. Husband v. Epling, 81 Ill. 172; Kelley v. Hemmingway, 13 Ill. 604; Kingsbury v. Wall, 68 Ill. 311; Chitty on Bills, p. 134; Smalley v. Edey, 15 Ill. 324; Gillilan v. Myers, 31 Ill. 525.

Bonds and all other negotiable securities, given under circumstances where the statute expressly states that they shall be void, are void in the hands of innocent purchasers for value without notice. Town of Eagle v. Kohn, 84 Ill. 292; Richeson v. The People ex rel., 115 Ill. 450; Eddy v. The People ex rel., 127 Ill. 428; Pope v. Hanke, 155 Ill. 617.

The trustee had no power to commence proceedings to foreclose the second mortgage.

The trust deed is the instrument to which we must look to ascertain the powers, duties and rights of the trustee. McClelland v. Norfolk So. R. R. Co., 110 N. Y. 469; Nelson v. Hubbard, 96 Ala. 238.

The resolution of the directors attempting to waive the conditions of the trust deed was a fraud on the stockholder. Higgins v. Lansingh, 154 Ill. 365; Hoffman v. Reichert, 147 Ill. 274; Morawetz on Corporations, Vol. 1, Sec. 5.

The directors of the railroad company could, by resolution, confer no new power on the trustee or alter and change the trust deed. Nelson v. Hubbard, 96 Ala. 238.

The land held by the Title Guarantee & Trust Company was not covered by the mortgages.

Land owned by a railroad and not essential for operating the same is not covered by a trust deed, reciting that it covers "the railroad constructed and to be constructed, together with all and singular the railways, rails and bridges, fences, privileges, rights and real estate now owned by said company, or which shall thereafter be owned by them." Seymour et al. v. Canandaigua & N. F. R. R. Co., 25 Barb. 284; Eldridge v. Smith, 34 Vt. 484.

The decree must not cover premises not described in the mortgage. Troutman v. Schaeffer, 31 Ill. 82.

The decree must not find too large an amount due.

"It is obvious that the finding of the amount due, for non-payment of which according to the terms of the decree the mortgaged property is ordered to be sold, is the foundation of the right of the mortgagee further to proceed, and a substantial error in that finding must, on appeal, vitiate all subsequent proceedings; unlike a calculable error in the amount of a personal judgment, which may be cured by remittitur, it is otherwise incurable; for as it is an illegal exaction, made as a condition for preserving the rights of the mortgagor in his estate, and if executed, depriving him wrongfully of them, it propagates itself through all subsequent stages of the cause." Chicago & V. R. R. Co. v. Fosdick, 106 U. S. 71; Tompkins v. Wiltberger, 56 Ill. 385.

There can be foreclosure for only such part of the debt as is due according to the terms of the mortgage. Smith v. Smith, 32 Ill. 198; Rains v. Mann, 68 Ill. 265.

The decree nisi ten days was too short a time to pay the decree.

The decree must provide a reasonable time, say ninety days, or six months, or until the next term of court, in the

474    Appellate Courts of Illinois.

Vol. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

discretion of the court, in which to pay the amount of the decree.    Howell v. Western R. R. Co., 94 U. S. 463; Chicago & V. R. R. Co. v. Fosdick, 106 U. S. 71.

" While there is no definite rule by which the time can be fixed it does seem that in view of all the circumstances of the case thirty days are unreasonable short."    Taylor v. Dillenburg, 168 Ill. 235.

No effectual sale by a decree can be made in a foreclosure suit until the occurrence of the event upon the happening of which a sale or foreclosure is authorized.    Hill on Trustees, 748.

It is error to entertain a cross-bill filed to enforce a mortgage not due.    Trayser v. Indiana A. U., 39 Ind. 556.

W. W. Gurley, attorney for the C. & S. S. R. T. R. R. Co., on motion to dismiss the writ of error.

Dupee, Judah, Willard & Wolf and Wilson, Moore & McIlvaine, attorneys for defendants in error.

The rule appears to be well settled that an appeal must be perfected or a writ of error sued out by and in the names in which the proceedings below were conducted, and in none other.    Robinson v. Magarity, 28 Ill. 423; Railroad Co. v. Surwald, 150 Ill. 394; and 147 Ill. 194; and that an appeal by a person not a party to the record is unauthorized and void.    Rorke v. Goldstein, 86 Ill. 568; Hesing v. Attorney General, 104 Ill. 292; Railroad Co. v. Surwald, 147 Ill. 194.

It is the settled law of this State that corporations may prefer creditors.    Their corporate property is not held in trust in such sense as to forbid them giving judgment notes, confessions of judgment or mortgages, or doing any other matter or thing in the exercise of the right they have to prefer one creditor to another.    Butler Paper Co. v. Robbins, 151 Ill. 588.

It is the settled law of this State that the directors and officers of an insolvent corporation have the power to dispose of corporate property, in good faith, for the pur-

pose of paying or securing corporate debts, and that they may do this, even though the result is that some creditors are given a preference over others. Illinois Steel Co. v. O'Donnell, 156 Ill. 624.

A clause in a lease that the same shall not be assigned without the written assent of the lessor, is for the benefit of the lessor only. It does not render the assignment, when otherwise made, absolutely void, but voidable only, at the option of the lessor or his representatives; and any act done by a landlord, knowing of a cause of forfeiture by his tenant, affirming the existence of the lease and recognizing the lessee as his tenant, is a waiver of such forfeiture. Webster v. Nichols, 104 Ill. 160.

A decree made by consent can not be appealed from, nor can error properly be assigned upon it. Even a rehearing can not be allowed in the suit, nor can the decree be set aside by a bill of review. Armstrong v. Cooper, 11 Ill. 540; 1 Barb. Ch. Pr. 373; Smith v. Kimball, 128 Ill. 583; Roby v. Title Guarantee Co., 166 Ill. 336.

A defendant can not, on error, contest a decree based on his own admissions, whether the evidence be or be not sufficient to sustain the bill.

Under a decree *pro confesso*, however, a defendant can not, on error, allege the want or insufficiency of the testimony, or the insufficiency or amount of the evidence that may have been heard by the court entering the decree. Where the defendants are persons not under disability, and a default is entered, a decree *pro confesso* follows as a matter of course. Such decree, if warranted by the averments of the bill, is unassailable. Monarch Brewing Co. v. Wolford, 179 Ill. 252.

The only difference between the present decree and one *pro confesso* is that the former stands on admissions by answer, while the latter is based on admissions by default. The present case is, therefore, so much the stronger, as admissions by answer are express and affirmative acts of the party.

A party can not complain of an error he has himself invited.

476    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

Even if the decree was erroneous, appellant could not be heard to complain, inasmuch as it was an error that he asked the court to commit. In his answer and intervening petition he alleged it was a trust estate or fund in the hands of the court and could not be divided by bill for partition. When this view so urged upon the court was adopted and the sale ordered, appellant changed his position, and now assigns for error here that the court did not proceed in accordance with the partition act. This he can not be permitted to do. Oliver v. Oliver, 179 Ill. 9; Smith v. Kimball, 128 Ill. 583; Cronk v. Trumble, 66 Ill. 428.

The issue of stock by a corporation for much more than the value of land which constitutes its only capital, when there are no other stockholders or creditors of the company to complain, can not be held to be a fraud on the company itself. Lack of authority in the charter for the issue of preferred stock will not prevent stock otherwise properly issued from being valid as preferred stock if it was issued by the original authority and consent of all the shareholders, or has received their subsequent ratification or long acquiescence. Higgins v. Lansingh, 154 Ill. 301.

To entitle stockholders to the summary interference of a court, they must apply so recently after the doing of the acts complained of that the court may stop or undo the wrong to them without doing equal or greater wrong to some other person; or, in other words, if a stockholder wants protection against the consequence of an *ultra vires* act, he must ask for it with sufficient promptness to enable the court to do justice to him without doing injustice to others. Levin v. Chicago Gas L. & C. Co., 64 Ill. App. 393; Rabe v. Dunlap, 51 N. J. Eq. 40. See also Kent v. Quicksilver Mining Company, 78 N. Y. 159.

Mr. JUSTICE FREEMAN delivered the opinion of the court.

The application for the writ of error in this case, though in the names of the Chicago and South Side Rapid Transit Railroad Company, the mortgagor of the property the foreclosure of which it is sought to set aside, and the Title

Guarantee and Trust Company, was made and is prosecuted by certain stockholders of the railroad company, for the use of themselves and all other stockholders similarly situated. Having made demand that said companies themselves sue out such writ on or before a certain date, and the demand not having been complied with, said stockholders come into this court with their præcipe for a writ of error in the names of said companies—the nominal plaintiffs in error—filing also a petition setting out grounds upon which the application for the writ of error is based. The court, without passing upon any of the questions involved, directed upon the *prima facie* showing, that the writ issue, intimating that objections thereto could be brought up on motion to dismiss, when the record and parties would be before us.

Motions to dismiss the writ at the costs of the petitioning stockholders were made by the Northern Trust Company, trustee under the first mortgage, the Illinois Trust and Savings bank, trustee under the second mortgage, defendants in error, and by the South Side Elevated Railroad Company, present holder of the property, and by Leslie Carter and George E. Adams, who purchased it at the foreclosure sale; also by the Title Guarantee and Trust Company and by the Chicago and South Side Rapid Transit Railroad Company itself, the nominal plaintiffs in error. The grounds of said motions are, first, that the issuance of said writ of error was in no way authorized by said nominal plaintiffs in error, and that without such authority the petitioners as stockholders of said Chicago and South Side Rapid Transit Railroad Company had no right to sue out the writ; second, that none of the stockholders of said railroad company were prejudiced by the foreclosure proceedings, and none would be benefited by reversal of the decree of foreclosure; and third, that even if entitled to the writ upon a proper showing, no such showing has been made.

In support of the objections to the use of the process of this court in the manner proposed by the petitioning stockholders, affidavits have been filed tending to show that the

478    APPELLATE COURTS OF ILLINOIS.

VOL. 90.]    C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

said railroad company was at and before the time of the foreclosure proceedings, and has been ever since, hopelessly insolvent, and would be so insolvent even if the property, rights and franchises formerly belonging to said railroad company and sold under the foreclosure, were now restored to it, and the indebtedness paid by said sale revived; and that the issuance of the writ of error was never in any way authorized by said nominal plaintiffs in error, the Chicago and South Side Rapid Transit Railroad Company and the Title Guarantee and Trust Company, by their boards of directors or in any other way.    The affidavit filed by Leslie Carter, president of the South Side Elevated Railroad Company, states that the said railroad company was organized in 1897, and soon after acquired from the purchasers at the foreclosure sale the property there sold, and has since expended many thousands of dollars in the improvement and betterment of the railroad system so acquired; that it has also acquired new and additional rights and privileges of very great value; that said company's capital stock is $10,323,800, divided into 103,238 shares of stock of the par value of $100 each, which has, since the company's organization in 1897, been bought and sold in open market, and has passed into the hands of numerous persons who never had any interest whatsoever in the old Rapid Transit Company; that said new elevated company has issued and sold $750,000 of mortgage bonds now outstanding and owned by many different persons, which are secured by mortgage upon substantially all the assets of said elevated company; that the market value of the stock of the latter company does not exceed eighty per cent of its par value, making the maximum selling price $8,259,040; whereas the mortgage debt of the old Chicago and South Side Rapid Transit Company would, if the foreclosure sale were set aside, exceed $12,500,000.    It is further averred that the said foreclosure proceedings were widely known and discussed at the time they were had; that the petitioning stockholders herein were informed of and conversant with them, and never sought entrance into that suit or made objection thereto.

A motion was made on behalf of the petitioners to strike certain of the affidavits from the files upon the ground that the court will not inquire into matters *dehors* the record by affidavit. But as said affidavits are presented in support of the motion to dismiss the writ of error, as tending to show that the petitioning stockholders have no standing to prosecute such writ, matters tending to sustain such contention which do not appear of record are properly presented by affidavit. Moreover, the petitioners have caused the South Side Elevated Railroad Company to be summoned herein as terre-tenant in possession of the property in dispute, and have also brought in Messrs. Adams and Carter by scire facias, none of whom were parties to the original foreclosure proceedings. It would seem to be proper under such circumstances, for them to be allowed to present any material facts which may tend to support their motion to dismiss.

Counsel for petitioners state that they rely with confidence upon the case of Anderson v. Steger, 173 Ill. 112, as authority for bringing this writ. In that case it is held that where a plaintiff in error could have sued out a writ of error at common law upon a like interest, the motion to dismiss such writ should be denied; that at common law the person entitled to a writ of error must be a party or privy to the record, or be one who is injured by the judgment or will be benefited by its reversal or competent to release error; and by privies to the record are said to be meant "heirs, executors, administrators, terre-tenants, or those having an interest in remainder or reversion, or one who is made a party by the law." It is claimed in behalf of the petitioners, that as "a stockholder is the *cestuis que trustent* of his corporation and the ultimate beneficiary of its assets," he is necessarily "injured by a decree wrongfully taking from his corporation every dollar of its assets," and is hence entitled to the writ.

It does not, however, necessarily follow that a stockholder is injured by a decree taking the property of his corporation in payment of its debts, in such sense as to entitle him to a writ of error. If the reversal of the decree

480    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

would restore to him personally the property in dispute he might be so benefited, and the Anderson case would then be in point. But even if. the result of a reversal in this case would be to restore the property to the corporation, the benefit to the stockholder would be indirect, and in case of an insolvent corporation, more likely to inure to the benefit of creditors than to himself. If prejudiced by the decree in controversy, the stockholders are indirectly so prejudiced. But such indirect prejudice does not of itself authorize the suing out of a writ of error. McIntyre v. Sholty et al., 139 Ill. 171 (178).

It is urged that a bill of review is in the nature of a writ of error, and the case of Farwell v. Great Western Telegraph Company, 161 Ill. 522, is cited as similar in many respects to the case before us. In that case, Farwell, a stockholder, was allowed to file a bill in the nature of a bill of review to impeach a decree against the corporation, to which decree he was not nominally a party. It is true a bill of review, pure and simple, is in the nature of a writ of error. Allerton v. Hopkins, 160 Ill. 448 (452). But such a bill is to be distinguished from a bill only in the nature of a bill of review. There is no dispute over the proposition that a stockholder may, as in the Farwell case, seek relief in equity in his own name by a bill which is in the nature of a bill of review where the corporation wrongfully refuses or neglects to protect its rights, where its officers are acting in bad faith, fraudulently, or beyond the authority conferred by the charter. Farwell case, *supra*, p. 604; Thompson on Corporations, Sec. 4, 483; Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197 (207); Hawes v. City of Oakland, 104 U. S. 450.

But in the present case we have not a bill in equity filed by the petitioning stockholders in their own names in a court of original jurisdiction, but a writ of error sued out in the names of two corporations for the use of the petitioners who are stockholders in one of them, and as appears from affidavits not disputed, without consent of, or authority from the corporations named as plaintiffs in error. Conditions justifying a bill in the nature of a bill of review

may not sustain a writ of error. In Anderson v. Steger, above referred to (173 Ill., on p. 117) it is said that in chancery causes to which the right to a writ of error has been extended by our statute without restrictions, it should be given the same scope as at common law, and not subjected to any limitation or restriction as to parties not imposed by the common law. But as before stated, at common law, the petitioners not being parties or privies to the record or directly injured by the decree, or in position to be benefited by its revers il, would not be entitled to the writ in their own names. We know of no reason or authority which would allow them to use the names of the nominal plaintiffs in error herein without consent and against the will of the latter, to obtain a writ of error to which they are not entitled in their own behalf. To so hold would be to subject the nominal plaintiffs in error, at the option and for the benefit of outside parties, to expense, and perhaps judgment for costs, at least, without power to protect themselves from what may be needless and useless procedure. In Ex parte Cutting, 94 U. S. 14, petitioning stockholders were denied leave to appeal from a foreclosure decree against the Pacific railroad. It is there said:

" Only parties, or those who represent them, can appeal. The stockholders do not represent the corporation, but for some purposes the corporation represents them."

It is said, however, by counsel for petitioners, that " there is a wide difference between an appeal and a writ of error." It is true that a writ of error was, at common law, a writ of right, which, by the statute, has been extended to chancery causes, while the right of appeal is purely statutory. But the restrictions as to parties are still those imposed by the common law. Anderson v. Steger, *supra.*

"Ordinarily a stockholder has no control over a suit against a corporation by a third party, nor is such stockholder, as a general rule, the representative of the corporation. The corporation is represented by its officers, who, in legal contemplation, are all-sufficient for the protection of the interests of that body." (Farwell v. G. W. T. Co., *supra*, on p. 602.)

482     APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

The exceptions to that rule do not, so far as we are advised, extend to allowing a stockholder to sue out a writ of error in the name of the corporation.

Since the motions herein were taken and the cause submitted upon briefs, a receiver of the Chicago and South Side Rapid Transit Railroad Company has been appointed by the Circuit Court, who has moved that he be permitted as such receiver to withdraw the motion heretofore made by said company to dismiss the writ of error herein, and for leave to assign the same errors as have been assigned by the petitioning stockholder. This is done, it is said, to "permit the examination and decision of the case upon the merits, without embarrassing the court with the jurisdictional question."

Whatever may be the effect of the allowance of this motion, so far as the railroad is concerned, there still remain the objection of the Title Guarantee and Trust Company to the use of its name as plaintiff in error, without its consent, and the motion of the South Side Elevated Railroad Company for dismissal of the writ upon the ground of laches.

In view, however, of the interposition of the receiver in whom the right of action as representative of the corporation now vests, and by whom the writ of error may be rightfully prosecuted, we deem it a proper exercise of discretion to allow his motion, and to consider the alleged errors in the record upon the merits.

It is contended by counsel for the receiver and petitioning stockholders that the mortgages of October 1, 1889, and January 2, 1893, being the first and second mortgages made to secure the two issues of bonds of the Chicago and South Side Rapid Transit Railroad Company are void, in so far as they attempted to convey the right to maintain and operate the railroad under the city ordinances.

The 16th section of the ordinance of March 26, 1888, granting said mortgagor company the right to maintain and operate its elevated railroad over certain streets and alleys in the city of Chicago, contains the following provision:

"It is further provided that the above consent shall never in any way or manner authorize any other railroad company, or street or horse or dummy railroad company, to use the franchise herein above granted to said Chicago and South Side Rapid Transit Railroad Company."

Subsequent amendatory ordinances granting said company privileges over additional streets and alleys are subject to the same limitations. Such consent is a mere license. C. C. R. W. Co. v. The People, 73 Ill. 541, 547.

Counsel for plaintiff in error contend the meaning of this provision is, that the Rapid Transit Railroad Company shall never authorize any other railroad company to use this consent. It is clear, however, the limitation is for the benefit of the city. The latter has the power to grant or withhold its consent to the use of its streets and alleys by a railroad company, and "in granting such consent the common council may impose such conditions as, in its opinion, the public benefit may require." Byrne v. Chicago General Ry. Co., 169 Ill. 75 (83). But in the case before us no condition is imposed. The language is a mere limitation of the consent to the railway company to which it is given, not a limitation upon its powers. It is a limitation of a character such as might perhaps exist without the clause referred to, where the consent is given definitely to a person or corporation specifically named. We do not, therefore, regard the case of Tudor v. Rapid Transit Railroad Co., 154 Ill. 129, as being in point. What the purpose of the city council was in this proviso, is mere matter of conjecture in which it is not profitable to indulge. The argument of counsel for the plaintiff in error is based upon the assumption that the clause in question is a prohibition against the sale or disposal of the city's grant. It is argued that the trust deeds which conveyed the railroad's right to use the grant to the trustees are void, because in that respect violating the prohibition of the ordinance. But the assumption is unwarranted by anything in the ordinance. The argument is based upon a false premise. The proviso in question prohibits nothing. It merely limits that particular consent to use the franchise to that specific company.

484    Appellate Courts of Illinois.

Vol. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

The railroad company had power under the statute (Chap. 114, Sec. 20 par. 10) to mortgage its corporate property and franchises, whether more or less valuable. The conveyance of its own right to use the franchise may have given no right thereto to the purchaser as against the city. It did, however, as against the mortgagor. The conveyance was good as between the parties. The city could exercise its discretion about giving its consent to the purchaser to use the franchise. As to this the purchasers at the foreclosure sale took the chances. But the sale of even a worthless thing, all parties knowing the facts, and taking the risks as to its thereafter becoming valuable, is not invalid. The refusal of the city to authorize the purchaser to use the franchise might affect its value perhaps, but would not avoid the sale as between the parties. The construction of an ordinance can be . determined, if necessary, in a direct proceeding. Chicago Gen. Ry. Co. v. City Ry. Co., 186 Ill. 219, 223.

In Webster v Nichols, 104 Ill. 160, it is said a clause in a lease " providing that the premises shall not be assigned without the written assent of the lessors, is clearly for the benefit of the lessors only. It does not render the assignment when otherwise made, absolutely void, but voidable only, at the. option of the lessors or their representatives." We agree with counsel for defendants in error that the principle is the same in the case before us so far as applicable; although here the ordinance does not attempt to provide that the franchise or the railroad property shall not be assigned.

It is further contended that the bonds secured by the first mortgage as well as the mortgage itself are void. The basis of this contention is that the construction company, to which the bonds and stock were issued originally in payment for the road, received $7,500,000 in stock and the same amount in bonds of the company, while the cost of building and equipping the entire road was only $7,728,-102.94, including the second section, not embraced in the original contract. It is said that this contract was so unfair as to be void, making the indebtedness fictitious.

The mere fact that stock and bonds, nominally of much greater par value than the cost of the railroad in actual money were given in payment therefor, is not of itself conclusive evidence of excessive, much less fictitious, consideration.   The contractor agreeing to build a road, and receiving in payment therefor stocks and bonds upon which he must realize in order to get the money, without which the road can not be built, is not likely to take such risks without a margin sufficiently large to make it worth his while to proceed with the undertaking.   Such a contract, if made and carried out in good faith, is not void, nor is the indebtedness so created fictitious.   In Peoria & Springfield R. R. v. Thompson, 103 Ill. 187, it is said that "although a contract entered into by the agents or officers of a private corporation is *ultra vires*, and therefore not binding on the company so long as it remains executory, yet if the company in such case knowingly permits the other contracting party, without objection, to go on and perform the contract on his part, and thereby obtains and appropriates money, property or labor in furtherance of some legitimate corporate purpose, it will be estopped from denying its liability on such contract." Here the company received a large part of the road and its equipment under the contract, which was moreover entered into with the full knowledge and consent of all parties interested in the corporation at the time.

It is urged that the bonds are to be deemed issued without consideration; that as the entire issues of stock of the par value of $7,500,000 and bonds for a like amount were turned over to the construction company in payment for property costing less than half that sum, both stock and bonds can not be treated as having been paid for; that until the construction company had paid its subscription for the stock it could hold no valid obligation against the company, and hence the bonds must be deemed invalid, as creating a fictitious increase of indebtedness, in violation of the constitution.

Whether or not the stock has been fully paid, we need not now inquire.   Our present inquiry is limited to the va-

486    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

lidity of the bonds. The court below found, and the finding is sustained by the evidence, and is not, so far as we can discover, disputed by anything in the record, that the bonds in question had passed into the hands of a large number of persons who are *bona fide* holders. But it is claimed by counsel for plaintiff in error that in view of the constitutional and statutory provision " that the fictitious indebtedness of a corporation shall be void," it is too well settled for argument that the bonds are void in the hands of innocent purchasers.

The provision of the constitution referred to is that " no railroad corporation shall issue any stock or bonds except for money, labor or property actually received and applied to the purposes for which such corporation was created, and all stocks, dividends and other fictitious increase of the capital stock or indebtedness of any such corporation shall be void." In the case of Peoria & Springfield R. R. Co. v. Thompson, above referred to, that provision of the Constitution is considered at length, and it is said (p. 202):

" In short, we are of opinion that when one for a present consideration in good faith purchases bonds or stocks in the regular course of business from a railroad company, and such consideration is accepted by the proper officer of the company, and nothing appears to show that it is to be used or applied to other than legitimate corporate purposes, such bonds or stocks, when thus issued, will be regarded as having been issued for money, labor or property (as the case may be) ' actually received and applied ' within the meaning of the constitutional provision in question."

It follows that bonds so purchased, like those in controversy, do not represent fictitious indebtedness. In the case last referred to it is expressly held (pp. 205–6) that any equities the company may have against the contractor for breach of the construction contract, can not be interposed so as to defeat the title of the present holders of the bonds. In that case, as in the case at bar, the bonds upon their face were payable to the holders.

Objection is made, the trust deed provides that in case of default in interest, the bonds shall become due and payable at the option of the trustee, a condition over which

the holders have no control and which might never arise, and hence it is said the negotiability is destroyed, as negotiable instruments must state some time at which they will unconditionally become due.    The objection is without force. The bonds by their terms become due respectively October 1, 1929, and January 1, 1933.    The option of the trustee is merely to declare them due before that time in case of default in payment of interest.

It is said that the cross-bill of the Illinois Trust and Savings Bank, trustee, to foreclose under the second mortgage, was prematurely filed, and the entire decree is thereby vitiated.

The second mortgage provided that the bonds thereby secured might be declared due in case of default for six months after demand in payment of interest, and the mortgage be foreclosed in case of continuance of default for six months.    Default was made in the payment of the interest due July 1, 1895, on the second mortgage bonds.    The cross-bill to foreclose was filed October 5, 1895.    The day previous the board of directors of the mortgagor at the request of the trustee, adopted a resolution waiving the six months condition, authorizing immediate foreclosure and conferring power on the trustee to proceed accordingly.

It is contended that this waiver was a fraud upon the stockholders, and evidence of collusion between the stockholders and directors.    It appears, however, that the first mortgage was about to be foreclosed, and that it was only a question of a short time when the second would be also, whether such waiver was made or not.    Nothing, so far as appears, was to be gained by delaying the filing of the cross-bill for three months longer, although additional expense might thereby be caused.    In such circumstances the waiver can not, of itself, be regarded as evidence of collusive fraud between the directors and bondholders.    It is said the corporation had no power to authorize the trustee to declare the principal due, inasmuch as the trustee himself, by the terms of the trust deed, can only so declare upon a request in writing from a quarter of the bondholders.    But the bondholders make no objection, and it was undoubtedly

488    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] C. & S. S. Rapid Transit R. R. Co. v. Northern Trust Co.

within the power of the company to pay its debt before it was due if the creditors consented. An insolvent corporation may dispose of its property in good faith for the purpose of paying or securing corporate debts. Illinois Steel Co. v. O'Donnell, 156 Ill. 624. The waiver was the act of the corporation, and it is too late to question for the first time in this court the right of the trustee to avail himself thereof, when no such objection was made in the court below. Hazel v. Bondy, 173 Ill. 302.

It is further contended that there was error in decreeing the sale of the land held by the Title Guarantee & Trust Company, which was not covered by either of the mortgages.

It appears from the undisputed evidence that this land was acquired in the settlement made with the construction company, which had purchased it with proceeds of the bonds received under its contract with the railroad company. By the decree the court "finds and holds, the defendant railroad company assenting thereto, that said real estate had been and is subject to an equitable lien in favor of the holders of both classes of said bonds, and should be sold to raise moneys for the payment thereof." In First Nat. Bank v. Illinois Steel Company, 174 Ill. 140–154, the court quotes with approval from Armstrong v. Cooper, 11 Ill. 540, as follows: "A decree made by consent can not be appealed from, nor can error properly be assigned upon it. Even a rehearing can not be allowed in the suit, nor can the decree be set aside by a bill of review;" and it is said, "these orders being made at the request of appellant, and by consent, it can not question their validity." This would seem to be conclusive of the present contention, even if it should be conceded that without such consent it would have been erroneous to find under the facts, that the real estate in question was subject to such equitable lien in favor of the bondholders.

In Troutman v. Schaeffer, 31 Ill. 82, referred to by counsel for plaintiff in error, the decree by its terms, owing apparently to a clerical mistake, foreclosed land in the wrong quarter section, which, of course, was fatal. But in the case at bar it was agreed that the real estate, though

not specifically mentioned in the mortgage, was subject to its equitable lien and should be sold to repay the bonds thereby secured.

It is insisted, finally, that the decree provided too short a time in which to pay so large a sum of money as $11,400,707. In Taylor v. Billenburg, 168 Ill. 235, it is said that what is a reasonable time in which to redeem from a foreclosure sale " rests in the sound discretion of the court in view of all the circumstances of the case." In the case at bar the decree directed that the mortgagor pay the amount found due upon the mortgages within ten days, and that in default of such payment at the end of that time the master proceed to sell after giving three weeks' notice. The sale of the railroad property rights, privileges and franchises, was to be absolute upon its confirmation, upon the execution and delivery of the master's deed. The sale of the real estate was to take effect upon the expiration of fifteen months for redemption. A reasonable time for payment of the amount due under such decree has been variously estimated. In Chicago, Danville, etc., R. R. Co. v. Fosdick, 106 U. S. 70, the opinion by Mr. Justice Matthews quotes from what is spoken of as "an authoritative rule of practice in such cases," prescribed in Howell v. R. R. Co., 94 U. S. 466, in which Mr. Justice Miller says that the decree to which the complainant is entitled " will ascertain the sum so due, and give the company a reasonable time to pay it, say ninety days or six months, or until the next term of the court, in the discretion of the court." It is further said by Mr. Justice Matthews that according to English chancery practice the time usually allowed by the decree to pay the mortgage debt was six months. That was not regarded as an absolutely fixed period, but might be varied so as to be reasonable according to the discretion of the court and the particular circumstances of the case; and where, according to the English practice, a sale instead of foreclosure was ordered, the form of decree was the same, directing sale within the usual time of six months " or within a shorter period, or even immediately, if by consent, where it was considered to be for the benefit of all

parties." All that is indispensable is that the mortgagor be required to pay within a reasonable time, to be fixed by the court. By the supplemental abstract herein, it appears that the sale was made September 16, 1896, two months and seventeen days after the entry of the decree. September 29, 1896, the sale was ordered confirmed, unless within ninety days payment should be made. It was confirmed December 29, 1896. It thus appears that the mortgagor was actually given six months in which to pay or obtain a higher bid for the property, the full limit of what, according to the authorities above referred to, is deemed a reasonable time. No application was made for further time.

We have not referred in this discussion to all the points raised and cases cited by counsel in the various printed motions and briefs—some fourteen in number—to which our attention has been invited. We have, nevertheless, considered them with the care which the importance of the case seems to demand. We find in the record no evidence to warrant the conclusion that the foreclosure proceedings have been fraudulently begun or conducted. So far as appears there was no concealment from the stockholders, and full publicity was given to the whole procedure.

The construction contract and the first mortgage trust deed were concurred in by all the stockholders. The second trust deed was likewise duly authorized. Neither the company nor the stockholders can now be heard to complain of their own acts. It does not appear that subsequent purchasers of the stock were in any way misled. They were at liberty to buy or not, in the open market, and form their own estimate of value. The decree of sale has been acquiesced in for more than two years, during which the purchaser has expended large amounts upon the property and many persons have become interested in it as stockholders in the purchasing corporation, and as holders of its bonds.

But aside from the laches in suing out the writ, we have been unable to find substantial error in the record, and the decree of the Circuit Court will therefore be affirmed.