## Clarissa A. Klock *et al.*

### *v.*

### Ellen Walter.

1. Mortgage —*what constitutes.* Where a deed, though absolute in form, is intended as a security for money, it will be treated as a mortgage, or where the money of one purchases land and it is conveyed to another, a trust results in favor of the one whose money paid for the land.

2. Where land was advertised for sale under a senior mortgage, and by an arrangement between the owner, the junior mortgagee and a third party, the latter bid the land off for the amount of both mortgages, and paid the amount due on the first mortgage with money furnished by the junior mortgagee, with the understanding that the owner might have further time in which to sell the land and pay off the amount due on both mortgages, with interest thereon: *Held,* that the transaction amounted to a mortgage, and that upon payment of the amount due on the two mortgages, with interest, the owner was entitled to a conveyance.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

The facts in this case will be found in 55 Ill. 362, as they were presented in a prior bill filed, which should be taken in connection with those set up in the new bill, as stated in the opinion.

Messrs. MILLER & FROST, for the appellants.

Messrs. GOODRICH & SMITH, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

At the September term, 1870, this case was before this Court, and is reported in 55 Ill. 362. The bill had been dismissed without prejudice, in the court below, and the decree was affirmed. In that case it did not appear that appellee in this case had paid any portion of the purchase money at the master's sale, on the Sands mortgage, which had been transferred to the city; at which sale McCollum purchased and received a deed. In the bill, in this case, it is alleged that, the title being doubtful and complainant was negotiating to sell the property, it was agreed that the property should be sold, and McCollum should advance the sum necessary to pay off the city's mortgage, and that he would give appellee time to sell the property and refund the money with interest, and that Peacock held a junior mortgage, which, with that held by the city, amounted to $6000, and that McCollum should bid off the property at that price, and that Peacock

27—70TH ILL.

would give complainant further time on his mortgage, she paying interest on his debt until she could sell the property and pay him principal and interest. But before the sale McCollum found he was unable to advance the money to pay for the land under the sale by the master, when it was agreed that Peacock and McCollum should make a note and discount it at bank, which it was agreed Peacock should pay at maturity, and McCollum should still purchase and hold the land until complainant should be able to sell the property and pay both sums to Peacock, with interest. The money was thus obtained, the purchase made, and the entire sum, both of the loan and Peacock's mortgage, has been paid by appellee to him, with interest. These allegations are fully proved.

In these particulars the latter bill is essentially different from the former. This bill also alleges, and the proof establishes, that complainant has surrendered the note given by Peacock and McCollum, so that the estate of the latter can never be called on to pay or defend against it as a claim. These facts make an essential difference, and show that complainant was to pay and did pay the entire purchase money, and that McCollum never advanced or paid a single dollar. In fact, when complainant's agent came to pay the bid at the master's sale, the money raised on the note lacked about $90 of paying the amount due the city, and the agent paid it with his own money, and charged it to complainant. Although McCollum bid the property off at $6000, the money raised on the note, the amount paid by the agent of complainant, and the Peacock mortgage, satisfied the bid.

The evidence establishes beyond doubt that the whole transaction was for the benefit of complainant, and that she was to refund the money, with interest. It operated as a loan to her, and, under the terms of the arrangement, the purchase at the sale, by McCollum, operated as a mortgage. He was simply to hold the land until complainant could sell it, and pay the money, with interest. By the arrangement he took

the legal title, but in equity a trust resulted to her. See *Smith* v. *Sackett*, 5 Gilm. 535; *Davis* v. *Hopkins*, 15 Ill. 519; *Coates* v. *Woodworth*, 13 ib. 654; *Pensoneau* v. *Pulliam*, 47 ib. 58; *Smith* v. *Doyle*, 46 ib. 452; *Fleming* v. *McHale*, 47 ib. 282; *Switzer* v. *Skiles*, 3 Gilm. 529; *Dennis* v. *McCagg*, 32 Ill. 439; *Reigard* v. *McNeil*, 38 ib. 404; *Reeve* v. *Strawn*, 14 ib. 94; *Bruce* v. *Roney*, 18 ib. 72. Other cases in our own court might be cited, but these are sufficient to illustrate the rule, that where a deed is intended to be a security for money, it will be treated as a mortgage. Or where the money of one person purchases land, and it is conveyed to another, a trust results in favor of the person whose money paid for the land.

That the transaction, from its inception to its conclusion, was intended for the benefit of complainant, seems to be proved beyond doubt. It is shown in this case that the property was worth $16,000. And it would be incredible that complainant and her agent would make such efforts, and she agree to pay the entire sum that McCollum bid, simply to vest him with the title. Again, when he signed the agreement to convey to Nickerson, he declared he had no interest in or claim on the property, and that they could give the agreement to convey any shape they chose, but he would only warrant against his own acts. Had he lived, we have no doubt he would have conveyed to complainant, without the slightest hesitation.

Then, if he had no claim in conscience and made none, but disclaimed all interest, and, as Peacock says, he has received all of his money, with interest, according to the agreement, from complainant, why should any person but her have the land? Why thrust the title upon the heirs of McCollum, when they only succeeded to his rights, and when he, whilst performing his last act in connection with this property, declared that he had no claim whatever upon it? Why does the claim of his heirs rise higher than his? They have done no act, paid no money, and their ancestor paid none, and

whence their equity? They have none, and it would be monstrous to decree it to or permit them to hold it.

The relief might be placed on the ground that McCollum sold the land to Nickerson. And no one would for a moment doubt, that if Nickerson had paid the stipulated price, as it was agreed by the parties, he could have compelled a conveyance. And we presume it will not be doubted that such an agreement may be assigned, so that equity may acquire jurisdiction to enforce the performance of the contract in favor of an assignee. Thus, complainant became the assignee of this contract, and, as such, paid the stipulated price, and must be entitled to a conveyance, precisely as Nickerson would, had he held the instrument and made the payment. Equity appeals strongly to us for the relief sought, and it would be highly unjust if it were denied.

The decree of the court below is affirmed.

*Decree affirmed.*