## Harold S. Osborne, Administrator, Appellant, v. Fred W. Morgan et al., Appellees.

### Gen. No. 17,016.

1. MORTGAGES—*inferences in bill not admitted by demurrer.* On a bill by a stockholder to have a corporate deed and bill of sale to a creditor, executed in pursuance of a resolution, declared to be a mortgage, where the bill does not state facts questioning the action of the corporation or the facts stated in the resolution, or set forth any false and fraudulent representations inducing the execution of the instruments, a demurrer does not admit the correctness of inferences that the instruments were a mortgage.

2. MORTGAGES—*necessity of debt.* A bill by a stockholder to have a corporate deed and bill of sale to a creditor, executed in pursuance of a resolution stating that the transfer was to pay debts, declared to be a mortgage, that does not aver that the creditor is claiming a debt against the corporation or that the terms and conditions of the resolution have not been carried out, contains no showing of the essential fact of a debt and a liability to pay it.

3. MORTGAGES—*deed in satisfaction of indebtedness not a mortgage.* A deed and bill of sale given in satisfaction of an indebtedness cannot be declared to be a mortgage.

4. MORTGAGES—*evidence showing deed to be a mortgage.* To convert a deed absolute into a mortgage the evidence must be clear, unequivocal and convincing; and the bill should aver facts from which the court can determine that, if they are true, the deed was not absolute, but was a mere security for debt.

5. CHANCERY—*averments on information.* Where the averments of a bill to declare a deed to be a mortgage are made upon the information of the complainant, the sources of such information must be set out.

6. MORTGAGES—*statute as to absolute deeds as mortgages does not apply to personalty.* R. S. c. 95, § 12, as to the constructive mortgages, has no application to personal property.

7. MORTGAGE—*when statute as to constructive mortgages does not apply to realty.* Where a corporation gave a deed and a bill of sale to a creditor to pay a debt, as set forth in a resolution, representations made to the corporation that the creditor had a use for the property and could sell it show that creditor did not intend the transaction as a mortgage, and R. S. c. 95 § 12, relating to constructive mortgages, does not apply.

8. MORTGAGES—*necessity of debt.* Where a corporation gave a deed and a bill of sale to a creditor to pay a debt, as set forth in a resolution, and there is no showing that the corporation still regarded itself as owing a debt which it must eventually pay or that the grantee held the property as trustee, except by inferences of the pleader who disclosed no sources of information, a bill to declare the deed and bill of sale to be a mortgage cannot be maintained.

9. CORPORATIONS—*right of stockholder to maintain bill to declare a deed a mortgage.* In the absence of a corporate intention that a deed and bill of sale should be considered as a mortgage and that the debt secured thereby was to continue, a stockholder filing a bill to declare the instruments to be a mortgage is bound by the corporate act, and cannot be heard to allege a different effect for the conveyances of the corporation from that given them by the corporation itself.

10. MORTGAGES—*effect of representations to directors prior to execution of alleged constructive mortgage.*  Where a corporation executes a deed and a bill of sale to a creditor, representations made by the grantee to individual directors prior to a board meeting will not impress upon the instruments the character of corporate mortgages, where that character is negatived by a resolution passed by the stockholders to the effect that the transfers were made to the creditor to pay a debt.

11. CORPORATIONS—*condition precedent to action by stockholder.*  Where the president and superintendent of a corporation have been in control, on a bill by a stockholder to declare corporate transfers to be mortgages an averment that the superintendent has moved away and has no further interest as a stockholder, and that the president is friendly to the defendants, does not furnish a sufficient excuse for failure to request the corporation to act.

12. CHATTEL MORTGAGES—*laches that defeats bill to redeem.*  A bill to redeem from a chattel mortgage if maintainable, will not lie after delay of six years and after the parties have changed their positions.

13. MORTGAGES—*when laches defeats bill to declare a deed a mortgage.*  Where a stockholder files a bill, asserting a corporate right, to declare a corporate deed and bill of sale to be a mortgage, a delay of six years and the fact that the grantee has disposed of the property will preclude relief.

14. MORTGAGES—*effect of insufficient allegations of bill.*  Where a bill by a stockholder to declare corporate transfers to be mortgages and for an accounting sets out an agreement, prior to the transfer, of a creditor and a customer to rehabilitate the affairs of the failing corporation, which was never submitted to the board of directors and was apparently merged into the deed and bill of sale, vague and indefinite statements as to the agreement will preclude an application of the agreement to the alleged equities.

15. MORTGAGES—*constructive.*  A bill by a stockholder to declare corporate transfers to be mortgages and for an accounting is insufficient where it shows that the property involved had been mortgaged to a creditor and a receiver appointed, and that a deed and bill of sale were subsequently executed to the creditor to pay his debt, and where the only inference that can be drawn from the bill is that the creditor came into possession through foreclosure sale.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed July 9, 1912.

**Statement by the Court.** This is an appeal from a decree sustaining a demurrer for want of equity to an amended bill, and dismissing the bill. Harold S. Osborne, as administrator *de bonis non* of the estate of Louise N. Osborne, deceased, filed the bill on behalf of the estate in October, 1905, against Fred W. Morgan, Morgan & Wright, Rubber Goods Manufacturing Company, American Bicycle Company, Charles H. Sieg, Charles H. Sieg Manufacturing Company, Elmer Weck, Frank Sayre Osborne and Walter E. Lindsay, defendants. The bill was filed on behalf of the other stockholders of the Charles H. Sieg Manufacturing Company, hereinafter for convenience called the Sieg Company.

The material allegations of the bill are in substance as follows:

The Sieg Company is an Illinois corporation with a capital stock of $100,000. Louise N. Osborne, deceased, was in her lifetime the owner of $50,000 par value of stock in the company; the remaining $50,000 of the stock was owned by Charles H. Sieg and Fred W. Morgan. Mr. Morgan also holds $20,000 of Mrs. Osborne's stock, which was issued to him in order to give him power to vote it and to control the corporation. Mrs. Osborne died December 29, 1902, and the complainant was appointed administrator *de bonis non* on May 27, 1905.

The Sieg Company was for many years in the manufacture of bicycles in Kenosha, Wisconsin. The business of the company was large and prosperous up to the fall of 1898. Charles H. Sieg was the president, and Frank Sayre Osborne, the husband of Louise N. Osborne, was secretary and treasurer of the company representing his wife's interest in the company. The business, however, was actually under the control and direction of Sieg and Elmer Weck, who was the mechanical superintendent of the company, and held a small amount of stock therein, but under some ar-

rangement with Sieg and Morgan he is no longer a stockholder.

Among the necessary materials purchased and used in the business of the Sieg Company were pneumatic tires which were purchased almost exclusively and in large quantities for many years from Morgan & Wright, defendants, an Illinois corporation, of which Fred W. Morgan was president and in virtual control. Morgan & Wright sold these tires to the Sieg Company for $6.00 a pair, and it sold the tires to the smaller dealers at the same price. The Sieg Company sold them for the same price without profit. Prior to October, 1898, the Sieg Company purchased from Morgan & Wright 200,000 pneumatic tires for $6.00 a pair, and became largely indebted to Morgan & Wright therefor.

The bill avers that the credit of the Sieg Company was good and that it purchased its material, including pneumatic tires, partly on credit, making payments as returns were made to it on the sales of wheels. In the course of business in July, 1898, the Sieg Company became indebted to Morgan & Wright on promissory notes in the aggregate sum of $40,070.92. It was also indebted to the other creditors, whose claims aggregated about $40,000. On July 6, 1898, Morgan & Wright demanded and obtained from the Sieg Company a real estate mortgage and a chattel mortgage, securing six promissory notes for the indebtedness above mentioned, the two mortgages covering practically all the property of the Sieg Company, except its choses in action and accounts receivable. By this action the smaller creditors of the Sieg Company were disturbed, and immediately one of the creditors commenced an action against the Sieg Company and obtained a receiver in one of the courts of Cook county, Illinois; thereupon Morgan & Wright commenced foreclosure proceedings against the Sieg Company on the mortgages in one of the Wisconsin courts, and

obtained a receiver of the company in that proceeding. A controversy arose between Morgan & Wright and the other creditors. Morgan & Wright desired and requested the assistance of the Sieg Company in its controversy with the smaller creditors, and gave assurance to the latter company that it would protect the Sieg Company, see it through its troubles, and see that all of its other creditors were paid, and on this understanding and consideration, the Sieg Company did all in its power to assist Morgan & Wright and put it in possession and control of the company and its property. The bill avers that Frank Sayre Osborne, representing his wife, did what he could and also attempted to learn something of the situation, but that he and all those interested for Mrs. Osborne were kept by the company and its officers in ignorance of everything that was going on except the general fact of the mortgages and suits, and that Morgan & Wright were going to take care of the Sieg Company. The Wisconsin receivers obtained by Morgan & Wright went into possession and control of the Sieg Company's property and business in the summer of 1898, and continued in such control for some months, defeating the other creditors for the time being.

The bill avers that in all these transactions Frank Sayre Osborne acted for and represented Louise N. Osborne and Ambrose A. Worsley acted for and represented the defendants, Fred W. Morgan and Morgan & Wright, having authority to so act and represent them. In October, 1898, Worsley and Sieg represented to Frank Sayre Osborne that Mr. Morgan thought highly of the Sieg Company's plant, property and business, and was interested to put it on its feet in good condition; first, because on the first of November following, the United States Bankruptcy Law would take effect in such a way that the other creditors could file involuntary bankruptcy proceedings against the Sieg Company and destroy Morgan &

Wright's mortgage security, as well as the Sieg Company's business, and also because the Sieg Company had for years been placing large quantities of Morgan & Wright's goods upon the market at the highest retail price, all the profits of which went to Morgan & Wright and none to the Sieg Company, and that the Sieg Company had been and would continue to be, if kept going, an important money maker for Morgan & Wright. They represented that one Walter E. Lindsay was also interested in keeping the Sieg Company a going concern, because he had built up a trade in goods of their make abroad as well as at home; and for these reasons Morgan and Lindsay were willing to, and offered to take hold of and extricate the Sieg Company from its difficulties, see that its debts were paid and that it was put on its feet and continued in business; but that Morgan wanted the control of the Sieg Company and proposed that the stockholders assign their stock, or the greater part of it, to him for that purpose; that the other creditors of the Sieg Company would settle for about 20 per cent. of their claims, and that Lindsay would advance to the Sieg Company sufficient money to settle with the small creditors up to about $15,000, if necessary, and was able to advance the company about $12,000 more for working capital, provided the company would repay him within a year with interest, and that Morgan, who controlled the mortgage indebtedness to Morgan & Wright of about $40,000, would reduce that indebtedness to 40 per cent. of its face, and would also make the Sieg Company safe concerning a first mortgage then existing upon the real property of the Sieg Company of about $25,000; that the stock of the Sieg Company belonging to Sieg and Weck would be assigned by them to Morgan for the purposes indicated, and Worsley offered on behalf of Morgan to cause all these things mentioned in his proposition to be carried out and done, provided Mrs. Osborne would cause to be

assigned and turned over to Mr. Morgan her stock in the Sieg Company, or $20,000 par value of the stock.

Frank Sayre Osborne, relying wholly upon the representations so made to him, accepted the proposition with the stipulation that he should be allowed to be a director and the secretary and treasurer of the Sieg Company, and to take an active part in the management and business of the company and represent Mrs. Osborne therein. This was agreed to. Accordingly Mrs. Osborne turned over to Mr. Morgan $20,000 par value of her stock.

In August, 1899, Worsley represented to Frank Sayre Osborne and to Sieg that Lindsay was in financial difficulties and unable to carry out his part of the arrangements made, and that Morgan thought it best that deeds of the whole property of the Sieg Company be made to him, and that he (Morgan) would take it upon his own hands; that he was negotiating some large business connections or transactions for the Rubber Goods Manufacturing Company, a corporation in which Morgan and Morgan & Wright were largely interested, with the American Bicycle Company, and could use the Sieg Company's plant to good advantage for the benefit of himself and the Rubber Goods Manufacturing Company, and that he might, and probably would, be able to sell the plant and property of the Sieg Company to the American Bicycle Company for a full fair price, and failing so to do would take hold and develop the property himself for the manufacture of bicycles and other lines of manufacture, and that all he should want in return from the Sieg Company was the money which was coming to him and Morgan & Wright, with interest; that is, 40 per cent. of the $40,000 of its indebtedness, and any moneys that he had already or should thereafter advance, and interest thereon.

Worsley had with him the deeds already prepared by him for Morgan, one of the real property and one

of the personalty of the Sieg Company, conveying the same by the Sieg Company to Fred W. Morgan, and also a resolution to be passed by the board of directors of the Sieg Company authorizing such deeds.

The bill avers that these representations were made to the Sieg Company and to the officers and directors of the company for the express purpose of inducing the passage of the resolution and the execution and delivery of the deeds, and at about the same time Fred W. Morgan personally made substantially the same representations and statements to Charles H. Sieg, and that the representatives of the company relied upon said representations; the resolutions were thereupon passed and the deeds executed and delivered. The resolutions were as follows:

"WHEREAS, The Sieg & Walpole Manufacturing Co., now the Chas. H. Sieg Mfg. Co., did on July 25, 1895, execute twelve promissory notes aggregating $30,000, and numbered from one to twelve, respectively, payable to its order and by it endorsed in blank, all due in one year from date; and

WHEREAS, for the purpose of securing payment of same said Sieg & Walpole Manufacturing Company did on the same day execute its deed of trust to E. D. Tuttle, trustee, conveying all its real estate, buildings, machinery and bicycle tools of every description, situated in the city of Kenosha, Kenosha county, Wisconsin, all of which more fully appears by reference to said deed recorded in Vol. 29 of Mortgages, at page 550 of the records of said County; and

WHEREAS, but five thousand dollars of said notes were paid at maturity, the balance, to-wit, twenty-five thousand dollars having been extended from time to time and being still due and unpaid, together with over six hundred dollars of accrued interest; and

WHEREAS, this Company on July 7, 1898, being indebted to various merchandise creditors in an amount aggregating eighty thousand dollars executed its six promissory notes aggregating in all $40,070.92 in favor of Morgan & Wright, the last of which fell due July 20, 1898; and

WHEREAS, for the purpose of securing payment of same this Company did on July 7, 1898, execute its second deed of trust covering its entire real estate, buildings, bicycle machinery and tools of every description located in Kenosha in favor of Morgan & Wright, its largest merchandise creditor, and to whom it was indebted in the amount last mentioned, all of which fully appears by reference to a record thereof in the records of said Kenosha County; and

WHEREAS, for the purpose of further securing said notes this company did on the same day execute a chattel mortgage upon all its personal property with the exception of choses in action in favor of Morgan & Wright for $40,070.92, which also appears by a record thereof in the office of said city clerk of Kenosha under date of July 8, 1898, at 10:45 A. M.; and

WHEREAS, this company effected a settlement with the balance of its merchandise creditors, whose claims aggregated about forty thousand dollars, since which settlement it has continued to carry on its business of manufacturing bicycles, but without sufficient working capital; and

WHEREAS, it is evident from the condition of the business at this time it will not be able to meet its obligations matured and maturing; and

WHEREAS, the principal sum of twenty-five thousand dollars due upon said mortgage has been overdue for about four years and there is interest past due amounting to six hundred dollars, and the owner thereof is threatening foreclosure proceedings unless principal and interest is immediately paid; and

WHEREAS, this company has been unable to comply with its settlement agreement with Morgan & Wright, and said Morgan & Wright are also threatening foreclosure proceedings unless said mortgage interest is also paid or secured.

THEREFORE, Resolved, by the stockholders of this company in meeting assembled, duly called, the owners of over ninety-four (94) per cent. of the issued capital stock being present or represented, and the directors and officers of this company be, and they are hereby authorized and directed to execute and deliver to F. W.

Morgan, owner of said first mortgage, in the name and for and on behalf of this company a deed and bill of sale conveying to said Morgan, upon his accepting same in full settlement and satisfaction of said first mortgage, and his assuming and agreeing to pay said second mortgage of $40,070.92 in favor of Morgan & Wright, the following described real estate and personal property:

Here follows a description of the manufacturing plant of the Sieg Company, situated in Kenosha, Wisconsin, "being the same property described in that certain deed of trust of the Sieg & Walpole Manufacturing Company to E. B. Tuttle, trustee, hereinbefore referred to. Also, all and singular the bicycle machinery and machinery of every description and character, and all bicycle tools and bicycle appliances, belting and bicycle fixtures of every description and character mentioned and described under the following heads: 'Machinery' (machine room), 'Wheelroom,' 'Engine Room,' 'Tool Room,' 'Assembling Room,' 'Buffing Room,' 'Plating Room,' 'Frame Room,' 'Polishing Room,' and 'Hardening Room,' in 'Exhibit A' attached to a chattel mortgage executed by the Sieg Manufacturing Company, on July 7, 1898, in favor of Morgan & Wright, which chattel mortgage was acknowledged the same day and recorded July 8, 1898, in the office of the city clerk of Kenosha, Wisconsin, at 10:45, 'and to which for a more detailed and more particular description of the machinery, tools and fixtures intended to be included in said bill of sale and deed to said Morgan reference is hereby made:'"

The bill then avers that upon the delivery of the deeds of the property to Morgan, he continued to carry on the business and affairs of the company; that the models for wheels for the season of 1899 and 1900 had been prepared, and they were about to commence the manufacture of bicycles with a promise of a good season's business and profits; but in the midst of such preliminary work, in the latter part of 1899, Morgan caused a general slacking up of the work, employes were discharged, and the works gradually closed down

and finally suspended, though without the knowledge and consent of Louise N. Osborne or her husband; and that Morgan having consummated his arrangements with the Bicycle Trust, whereby the business of the Sieg Company would be transferred, all orders of the Sieg Company were thereafter filled by Morgan & Wright and the Bicycle Trust, and thereby injured and defrauded the Sieg Company and through it the complainant's decedent, and obtained possession of the property of the Sieg Company fraudulently for his own purposes and gain; that Mrs. Osborne during her lifetime repeatedly requested of Morgan a statement as to the property and profit of the Sieg Company, and what, if anything, he had done with the same, but was unable to obtain any information from him.

All the manufactured goods, unmanufactured and partly manufactured materials, tools and property of every name, nature and description of the Sieg Company, not theretofore disposed of by Morgan, were shortly after the consummation of the agreement by him with the Bicycle Trust, moved to the Morgan & Wright plant of said Trust and appropriated and used, for what purpose complainant does not know.

Morgan still holds the $20,000 par value of the stock of the Sieg Company so assigned and delivered to him by Louise N. Osborne, and also, as complainant is informed, substantially all the remaining stock of the company, and the company is controlled by Morgan and has ceased doing business, leaving debts unpaid, and is virtually defunct.

That Fred W. Morgan, either on behalf of himself, or said Morgan & Wright, or both, has acted ever since taking possession of the Sieg Company and its property as mortgagee in possession thereof and of its proceeds, and as such should account therefor.

That Fred W. Morgan has caused large amounts of manufactured and unmanufactured material and other property of the Sieg Company to be sold, and has

appropriated the proceeds to his own use or the use of Morgan & Wright, or of said Rubber Goods Manufacturing Company; and has caused all the remainder of the stock, machinery, tools, raw and manufactured material and movable property and choses in action of Sieg Company, to be turned over and appropriated to or for the use of himself, or Morgan & Wright, or the Rubber Goods Manufacturing Company; and the complainant has recently been informed that Morgan claims to have sold or appropriated to his own use all the balance of the property in some manner or upon some consideration, to complainant unknown; and that on an accounting it will be found that Morgan and Morgan & Wright have received or appropriated to their own use money and property, or proceeds thereof, of said Sieg Company sufficient to more than pay all indebtedness owing to them under the terms of the agreement mentioned; and that Morgan has not carried out his agreement with Louise N. Osborne, and by reason of his failure to do so, Sieg Company and complainant have each been greatly damaged.

The bill then prays that Fred W. Morgan, Morgan & Wright, Rubber Goods Manufacturing Company, American Bicycle Company, Charles H. Sieg, Charles H. Sieg Manufacturing Company, Elmer Weck, Frank S. Osborne and Walter E. Lindsay, made defendants, may make answer, and that a full discovery and accounting be had under the direction of the court by Morgan, as trustee in possession, of all manufactured and unmanufactured material and stock, accounts, orders, contracts and choses in action, property, rights and franchises of said Chas. H. Sieg Manufacturing Company, conveyed and turned over to or received by said Fred W. Morgan.

That the Rubber Goods Manufacturing Company, Morgan & Wright, and American Bicycle Company join in said accounting so far as they, or either of them, have wrongfully received, appropriated, bought,

sold, used or interfered with the subject-matter of said accounting or the proceeds or any part thereof; and that an accounting also be had of the indebtedness to the said Fred W. Morgan and to Morgan & Wright, for which said property or its proceeds is or was held under the terms of the agreement above mentioned; also that a receiver be appointed.

To the bill the defendants filed a general and special demurrers, assigning twenty-six grounds or objections to the bill. Upon hearing of the demurrers to the bill as amended the court sustained the demurrers of the several defendants, and the complainant announcing that he had no further amendments to present, but would abide by the bill as amended, the court ordered that the bill of complaint be dismissed for want of equity at the costs of complainant. From that decree the complainant perfected this appeal.

MR. JUSTICE BARNES took no part in the consideration of this cause.

ROBERT F. PETTIBONE, for appellant.

PECK, MILLER & STARR, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

The principal contention of complainant is that the deed of the real estate and the bill of sale of the personal property were in fact mortgages, and that Mr. Morgan is mortgagee in possession, and that the bill, therefore, presents grounds of equitable relief.

The bill alleges that the bill of sale and deed were made in pursuance of a resolution by the stockholders at a meeting duly called, the owners of 94 per cent. of the issue of capital stock being present or represented. The resolution is set forth in the statement preceding this opinion. It purports to set forth the exact facts of the indebtedness of the Sieg Company and its condition at the time the resolution was adopted; and the

deed and bill of sale were executed in pursuance thereof.

The bill states that complainant's decedent owned one-half of the stock of the Sieg Company, and that the decedent's husband was secretary of the Sieg Company at the time of the adoption of the resolution and the execution of the deed and bill of sale, and as such secretary, signed the bill of sale. It appears, therefore, from the bill itself, that the stock of complainant's decedent was voted for the resolution by her husband as her representative; and complainant without stating any facts, contradicting, or in any manner questioning the action of the Sieg Company, or the facts stated in the resolution, or setting forth any false or fraudulent representations by which the Sieg Company was induced to make the deed and bill of sale, seeks now to have the transaction declared a mere mortgage, and the defendants to account for the property as such mortgagees. There are no facts stated in the bill, giving the deed and bill of sale the character of a mortgage, and that theory of the transaction rests simply upon the inferences of the pleader. A demurrer does not admit the correctness of inferences of the pleader. Greig v. Russell, 115 Ill. 483.

There is no averment in the bill that Morgan did not carry out the conditions of the resolution passed by the Sieg Company, and under which the deed and bill of sale were executed. There is no showing in the bill that Fred W. Morgan or Morgan & Wright are claiming any debt or debts against the Sieg Company as still existing, or that the express terms and conditions of the resolution passed by the Sieg Company stockholders have not been fully and in good faith carried out.

In order to overcome the express terms of the deed, a debt must exist and there must be a liability to pay it. Klock v. Walter, 70 Ill. 416.

"To render such transactions a mere security there must be mutuality. Both parties must be able to treat

and enforce it as a mortgage." Shays v. Norton, 48 Ill. 100.

In our opinion, the bill shows that the deed and bill of sale were given in satisfaction of the indebtedness of the company, and received as such, and for that reason the bill cannot be maintained. Rue v. Dole, 107 Ill. 275; Pitts v. Cable, 44 Ill. 103.

The bill does not set up any writing of defeasance, or claim that any such writing was made. In order to convert a deed absolute into a mortgage, the evidence must be clear, unequivocal and convincing, and the bill should aver such facts from which the court could determine that, if true, the deed was not absolute, but was a mere security for a debt. This the bill does not do. Keithley v. Wood, 151 Ill. 566. In our opinion, upon the averments of the bill, the court cannot infer that the deed and bill of sale in question was a mortgage given to secure a debt. The allegations of the bill upon this question are too uncertain and indefinite to justify any interference to that effect by a court of equity upon the facts stated.

The complainant claims no personal knowledge of any of the transactions leading up to the execution of the deed and bill of sale described in the bill, and the averments are, therefore, necessarily made upon information and belief. The bill further alleges that neither decedent nor her husband, although he was her representative, and was secretary and treasurer of the company, had any definite knowledge of many of the matters set forth in the bill. No sources of information as to the facts stated or averments made in the bill are set out. Where the averments of a bill are made upon the information of the party complaining, the sources of such information must be set out. Blondheim v. Moore, 11 Md. 365.

The bill fails to show any fraudulent representations of facts made by Morgan or his representative Worsley, or by Morgan & Wright, upon which the directors

and stockholders of the Sieg Company transferred its property to Fred W. Morgan. The bill shows that the company was largely in debt; that it was in a position where it could not continue its business and meet its indebtedness; that its creditors, large and small, were pressing their claims, and upon the giving of the mortgage to Morgan & Wright the smaller creditors obtained judgments and filed bills in Illinois, and that the Sieg Company was unable to pay its debts and continue in business without assistance. The Sieg Company seems to have accepted the assistance of Fred W. Morgan and Morgan & Wright, in its financial difficulties, and by making the deed and bill of sale in question, secured the contract of responsible parties to pay off its indebtedness; and there is no showing in the bill that the consideration thus agreed upon with the company was not fully performed and carried out by the defendants, Fred W. Morgan and Morgan & Wright, or that it was not adequate and reasonable.

There is no allegation in the bill as to the respective values of the real estate and personal property. Construing the bill against the pleader, the bulk of the value was in the personal estate. This, however, appears from the bill, for the inventory of partly and completely manufactured bicycles is shown to amount to $22,301.15. The large schedule of tools and machinery may be fairly assumed to be worth as much or more than the goods manufactured and in course of manufacture. The statute relied upon (R. S. Ill., Chap. 95, Sec. 12) has no application to the personal property. It applies to deeds of real estate intended only as mortgages. The representations of Worsley, which it is claimed the corporation relied on, were that Morgan had a use for the property—that he would be able to sell it, and that it would help him in his deal with the Bicycle Company. These statements themselves showed plainly that Morgan did not intend the

transaction as a mortgage. He was getting a clear title to the property on which he and Morgan & Wright then held two past due mortgages, and was giving a discharge of the indebtedness in return. The statute, therefore, could not apply to the deed conveying the real estate.

The bill avers that Morgan refused to give any writing of defeasance, but that his agent said that he could be trusted to do what was right. No obligation was, therefore, assumed, either by Morgan or his agent, and Morgan or Morgan & Wright, were under no obligation or duty to return any part of the property or the proceeds, according to the averments of the bill, to the Sieg Company. "This court has often held that where a conveyance is in form absolute in order to change its character to that of a mortgage, the proof must clearly and satisfactorily show that such was the contract and intent of the parties." Strong v. Strong, 126 Ill. 301. The bill must aver the facts showing the contract and intent of the parties.

During all the years that elapsed after the transaction and before the filing of the bill, no averment is made tending to show that the Sieg Company regarded itself as still owing an indebtedness to Morgan and Morgan & Wright, and that it was eventually to pay the indebtedness. Nothing is shown by the bill of any obligation to pay any indebtedness, or of the holding of the property in trust as mortgagee in possession, save and except what must be regarded as the inferences of the pleader, who knew nothing of the transaction and possesses no information in regard to it, and discloses no sources of information. There is no basis for any implied promise on the part of Morgan, or Morgan & Wright, to pay back any surplus that might be realized from the property conveyed; nor is there any averment showing that the Sieg Company agreed to keep its debt alive and thus place Morgan & Wright, or Morgan, in the position of a

mortgagee, or mortgagees in possession. Nothing is shown except from the inferences of the pleader, which are not admitted by the demurrer, that the parties intended that the transaction involved in the deed of conveyance and bill of sale was intended as a mortgage by the parties. In the absence of a corporate intention that the bill of sale and the deed should be considered as a mortgage or mortgages, and that the debt secured thereby was to continue, the stockholder filing this bill is bound by the corporate act, and cannot be heard to allege a different effect for the conveyances of the corporation from that given them by the corporation itself. Allen v. Wilson, 28 Fed. Rep. 677; 2 Clark & Marshall on Corporations, Sec. 544; 1 Morawetz on Corporations, 2d Ed., Sec. 244.

The bill does not show any corporate act making the bill of sale and the deed mortgages. The representations shown by the averments of the bill were made to two of the three directors of the corporation before any corporate action was taken. On the contrary, this theory of the plaintiff's action is negatived by a fair construction of the corporate act. We do not think that representations made on behalf of the grantee of the deed and bill of sale to individual members of the board of directors of the Sieg Company before the board meeting, would impress upon the bill of sale and deed the character of corporate mortgages, when that character is negatived by the resolution passed by the stockholders. The complainant's decedent participated in the corporate act, and by her representative, signed the deed and bill of sale in question, having voted to authorize the corporation to execute them.

In our opinion, the averments of the bill fall far short of any proper showing that the complainant had made application to the board of directors at any time, requesting such board to proceed to have the deed and bill of sale declared mortgages. No facts are shown by the bill, making it appear that the corporation has

refused to act, or that the application to the corporation would be futile and useless. Baker v. Admr. of Backus, 32 Ill. 79; 2 Clark & Marshall on Corporations, Sec. 543.

A mere averment that Weck has moved away and has no further interest as a stockholder in the company and that Sieg is friendly to the defendants named in the bill does not furnish a sufficient excuse, in our opinion, for failure to request the corporation to act.

This bill was filed some six years after the deed and bill of sale were made. A bill to redeem from a chattel mortgage, if maintainable at all, must be prosecuted with promptness and diligence. We do not think this bill was filed within a reasonable time, and before the parties had changed their positions. McDearmon v. Burnham, 158 Ill. 55; Walker v. Warner, 179 Ill. 16. This rule applies with stronger reason, we think, to a bill by a stockholder not in his own right, but asserting a corporate right. By some authorities laches for two years has been held sufficient to defeat the stockholder's right to file such a bill. Chicago, etc., R. R. Co. v. Northern Trust Co., 90 Ill. App. 460; Kent v. Quicksilver Mining Co., 78 N. Y. 159; Rabe v. Dunlap, 51 N. J. Eq. 40.

Laches appearing on the face of a bill is a proper defense upon demurrer. Henry County v. Winnebago Swamp Drainage Co., 52 Ill. 454; Ilett v. Collins, 103 Ill. 74; Turner v. Littlefield, 46 Ill. App. 169.

An alleged agreement is set out in this bill, purporting to have been entered into on October 28, 1898, between F. W. Morgan, Walter E. Lindsay and the Charles H. Sieg Manufacturing Company, by which it appears that Morgan agreed to advance $15,000, and Lindsay to advance the cash to buy in claims at twenty cents on the dollar, and to accept the Sieg Company's undertaking to make five thousand wheels and pay part in cash therefor, and to discharge the re-

ceivers, and providing that the company would pay $10,000 on the first mortgage in one year, and the second mortgage should remain unreleased until certain contingencies should happen, but which have never happened, and the company would pay Morgan & Wright $20,000 in one year and give endorsed paper therefor, and that the $20,000 of Osborne stock was to be transferred and deposited with the other stock as security for the repayment of the advances, does not appear by the bill to have been acted upon by the parties to the agreement or any of them. The bill shows that it was never submitted to or voted upon or approved by the board of directors of the Sieg Company. We are unable to decide from the bill what, if anything, was done under the agreement, and we cannot discover that it was ever in any manner carried into effect. At all events, it seems to have been subsequently abandoned or merged into the deed and bill of sale made in August, 1899. The averments of the bill are so vague and indefinite with reference to this agreement that we cannot see that any equity in favor of the complainant arises out of it, or that it in any way supports any other equity shown by the averments of the bill.

The bill does not show by what means or in what manner the property conveyed by the deed and the bill of sale passed from the possession of the Wisconsin court to any of the defendants in the cause, or what disposition was made of the property in the foreclosure proceedings. The bill shows that the property came into the possession of the court, or of the receiver of the court, in a foreclosure proceeding instituted by Morgan & Wright, but it does not show that thereafter the Sieg Company ever obtained possession of the property, or that the defendants obtained possession of the property from the receiver, and the only inference that can be drawn from the averments of the bill is that if defendants came into

possession of the property after it passed into the possession of the receiver of the court, it must have been through and by means of a foreclosure sale to such defendant or defendants. In that event, we are unable to discern from the bill any equities which can be asserted in behalf of the Sieg Company to the proceeds of the property, or the property itself, or any surplus in the proceeds of the property, in favor of the Sieg Company.

In our opinion the decree of the court sustaining the demurrer of the defendant is correct, and must be affirmed.

*Decree affirmed.*